**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
1100 15th Street NW, 4th Floor
Washington, D.C.  20005
Telephone: (202) 280-4783
jkaliel@kalielpllc.com

**KALIELGOLD PLLC**
Sophia G. Gold (SBN 307971)
950 Gilman Street, Suite 200
Berkeley, CA 94710
Telephone: (202) 350-4783
sgold@kalielgold.com

**EDELSBERG LAW, P.A.**
Scott Edelsberg (SBN 330990)
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (305) 975-3320
scott@edelsberglaw.com

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELI SILVA, on behalf of himself and all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| | JURY TRIAL DEMANDED |
| WHALECO, INC., d/b/a TEMU, | |
| Defendant. | |

## <u>INTRODUCTION</u>

1.      Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they know that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.      While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.      California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code § 17500.  This includes statements falsely suggesting that a product is on sale, when it actually is not.  Moreover, California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.

4.      Likewise, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(9), (13).

5.      In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.  They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case.  16 C.F.R. § 233.1.

6.      So, as numerous courts have found, fake sales violate these laws.  They also violate California's general prohibition on unlawful, unfair, and deceptive business practices.  *See* Cal. Bus. & Prof. Code § 17200.

7.      Defendant WhaleCo., Inc., d/b/a Temu ("Temu" or "Defendant") makes, sells and markets a variety of everyday use products and household necessities ("Products"). Defendant maintains a public website where it advertises the Products and their prices. Consumers who visit the website can purchase the Products through an online store hosted on the website.

8.      Plaintiff Eli Silva ("Plaintiff") bought Products from Defendant online on temu.com. Like Defendant's other customers, when Plaintiff bought the Products, Defendant advertised that a purported sale was going on and that it would end when a displayed countdown expired.  Plaintiff believed that the Temu Products that they purchased retailed for the displayed regular price.  They further believed that they were getting a substantial discount from the regular price, and that the sale

CLASS ACTION COMPLAINT

would end soon. These reasonable beliefs are what caused them to buy from Defendant.  If they had known that the Products they purchased were not on sale, they would not have bought them.

9. In truth, however, the representations Plaintiff relied on were not true. The purported "regular" prices were not the true regular prices, the purported "discounts" were not the true discounts, and the discounts were ongoing—not time limited. Had Defendant been truthful, Plaintiff and other consumers like them would not have purchased the Products, or would have paid less for them.

10. Plaintiff bring this case for themselves and the other consumers who purchased Temu Products.

11. By using misleading strikethrough prices to artificially increase the perceived value of Temu products, Temu harms consumers by inducing them to pay more for its products and make purchases they would not have otherwise made.

12. Temu's strikethrough prices also harm competition by giving Temu an unfair advantage over other Product manufacturers that do not engage in false reference pricing.

13. In addition to using misleading strikethrough prices, Temu also falsely advertises limited-quantity and limited-time offers.

14. Temu advertises misleading strikethrough prices, fictitious savings, and fake-limited time offers for hundreds of products on its website every day. The pervasive, ongoing nature of its deceptive pricing scheme demonstrates that false reference pricing is central to its overall marketing strategy. In bringing this lawsuit, Plaintiff intend to curb these and other unlawful and deceptive advertising practices on Temu's website. Plaintiff seek public injunctive relief in the form of a court order prohibiting Temu from continuing to falsely advertise on its website, and seek compensation for themselves and all others similarly situated who have been duped by Temu's false advertising.

## **PARTIES**

15. Plaintiff Eli Silva is a citizen and resident of Dublin, California.

16. Defendant WhaleCo, Inc. is a Delaware corporation with its principal place of business and headquarters in Boston, Massachusetts. WhaleCo Inc., operates Temu, an online retailer offering a wide range of products at heavily discounted prices.

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

17.     This Court has original jurisdiction over this action because (1) the proposed classes are comprised of at least This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

18.     This Court has personal jurisdiction over Defendant.  Defendant does business in California.  It advertises and sells its Products in California. Due to Defendant's actions, its Products have been marketed and sold to consumers in California, and harmed consumers in California. Plaintiff's claims arise out of Defendant's contacts with this forum.  Due to Defendant's actions, Plaintiff purchased Defendant's Products in California and were harmed in California.

19.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state.  Defendant advertises and sells its Products to customers in this District, serves a market for its Products in this District, and Plaintiff's claims arise out of Defendant's contacts in this forum.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred here.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

20.     Temu is an online marketplace operated by the Chinese e-commerce company PDD Holdings. It offers heavily discounted consumer goods which are mostly shipped to consumers directly from China.

21.     Temu's business model has allowed it to become popular among consumers but has also drawn concerns over data privacy, forced labor, intellectual property, and the quality of its marketplace products.

22.     Temu's online success has in significant part resulted from advertising misleading strikethrough prices, fictitious savings, and fake limited-time offers.

23.     In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a substantial discount. Consumers that are presented with

CLASS ACTION COMPLAINT

discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[1] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," and "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[2] Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[3]  Thus, Defendant's advertisements harmed Plaintiff and class members by inducing them to make purchases they would not have otherwise made based on false information.

24.     In addition, by the same mechanisms, Defendant's advertisements artificially increase consumer demand for Defendant's Products.  This puts upward pressure on the prices that Defendant can charge for its Products.  As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above.  So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Products they bought than
 they otherwise would have.

## I.     Temu Employs Fake Regular Prices and Discounts to Mislead Consumers

25.     Temu creates an illusion of savings on its website by advertising misleading strikethrough prices and fictitious savings based on those prices. Temu perpetrates this scheme by advertising a strikethrough price—i.e., the product's full, non-discounted price—which it typically displays in strikethrough typeface (e.g., $~~5.00~~).

26.     Adjacent to the strikethrough price, Temu advertises a sale price, which is the price at

---

[1] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/

[2] https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html

[3] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

CLASS ACTION COMPLAINT

which the product is currently offered for sale. Temu typically displays the sale price in larger, bolder font, often using a contrasting color.

27.   Throughout its website, Temu also advertises discounts or savings, which are typically displayed the percentage saved. Temu prominently displays the purported savings on its website together with words or phrases such as "limited time" to create a sense of urgency.

28.   Below is an example of how Temu advertises fictitious savings on its website:



After customers click the button to buy a product, Temu directs them to additional pages where they can customize the size, color, and quantity of the order. In a further act of deceit, the price changes based on these selections. For example, here, simply choosing a larger size results in a higher price.

///
///
///
///
///
///

CLASS ACTION COMPLAINT



29.   Once the item is added to the cart, as shown below, Temu prominently displays the strikethrough price, the sale price, and the savings customers are purportedly receiving.

30.   When customers proceed to check out, they are directed to pages where they can enter their information and review their order. On each of these pages, Temu again falsely promises customers savings equal to the difference between the strikethrough price and sale price. These "savings" are part of the contract that is entered into between Temu and its customers and part of the bargain that is struck between them. Below is an example of these representations that are made to customers at the time they place their order.



CLASS ACTION COMPLAINT

31.     After customers place their order, the promised savings are confirmed again on a webpage on Temu's website and memorialized again in an email from Temu that it sends to customers after receiving their order. \

32.     Discovery will show that on any given day Temu's offers hundreds of thousands of Products for sale on its website, and advertises nearly all of those at a discount from a strikethrough price. But discovery will show the strikethrough prices are misleading because they do not represent the actual prices at which the Products were ever sold or offered for sale for a reasonable period of time.

33.     Temu's pricing scheme is misleading because the savings advertised on its website (which are based on the advertised strikethrough prices) do not represent the actual savings customers receive, as Plaintiff and reasonable consumers understand that term. Moreover, Temu's strikethrough prices violate California law because they mislead consumers about the existence and amounts of Temu's price reductions.

34.     In addition to advertising misleading strikethrough prices and fictitious savings, Temu further misrepresents that the discounts are available only for a limited time and fails to disclose the continuing nature of these discounts. By giving potential customers the false impression that they will miss out on the advertised markdowns if they do not make a purchase soon, Temu induces customers to make purchases they would not have otherwise made and pay more for Temu products than they would have otherwise paid. Additionally, by imparting a false sense of urgency on prospective customers, Temu deters them from shopping at competitor websites.

35.     For that reason, the FTC's Guide Against Deceptive Pricing provides:

> [Retailers] should not offer an advance sale under circumstances where they do not in good faith expect to increase the price at a later date, or make a "limited" offer which, in fact, is not limited. In all of these situations, as well as in others too numerous to mention, advertisers should make certain that the bargain offer is genuine and truthful.

16 C.F.R. § 233.5.

36.     Temu's pricing scheme is misleading because the savings advertised on its website (which are based on the advertised strikethrough prices) do not represent the actual savings customers receive, as Plaintiff and reasonable consumers understand that term. Moreover, Temu's strikethrough

1  prices violate California law because they mislead consumers about the existence and amounts of

2  Temu's price reductions.

3  **II.    Temu Utilizes Fake Sales To Mislead Consumers**

4           37.     In addition to advertising misleading strikethrough prices and fictitious savings, Temu

5  further misrepresents that the discounts are available only for a limited time and fails to disclose the

6  continuing nature of these discounts. By giving potential customers the false impression that they will

7  miss out on the advertised markdowns if they do not make a purchase soon, Temu induces customers

8  to make purchases they would not have otherwise made and pay more for Temu products than they

9  would have otherwise paid. Additionally, by imparting a false sense of urgency on prospective

10  customers, Temu deters them from shopping at competitor websites.

11          38.     Temu employs a variety of means to impart this false sense of urgency on potential

12  customers. One way is by featuring products in the "Lightening Deals" section of its website, which

13  suggests that the advertised markdowns will expire. Temu lures potential customers to its Lightening

14  Deals by displaying a red banner at the top of its website.

15

16  

17          39.     In reality, the lightening deals almost never change. Immediately after each

18  purportedly time-limited sale ends, Defendant generates another similar discount

19          40.     In addition to advertising fake Lightning deals, Temu also uses fake "flash sales" or

20  holiday themed sales to deceive customers about the duration of its discounts. A reasonable consumer

21  is thus induced to complete the purchase immediately, lest the consumer miss out on the discounted

22  priced of the Product.

23          41.     When shopping on Temu's website, Plaintiff do not have access to Temu's former

24  prices and cannot determine which strikethrough prices represent bona fide former prices or which

25  savings represent actual savings. Moreover, Plaintiff have no way of determining in the future whether

26  Temu has corrected its deceptive pricing practices.

27          42.     Discovery will show that the vast majority of Products offered for sale on Temu's

28  website are sold exclusively on Temu's website and not available for purchase from traditional big

CLASS ACTION COMPLAINT

box retailers such as Walmart, Target, or Amazon ("Big Box Retailers").

43.     Discovery will show that because the majority of products offered at a discount on Temu's website are sold exclusively on Temu's website (or by Temu through third-party websites), the prevailing market price for those products are the prices at which Temu offers them for sale.

44.     With respect to products that are sold exclusively on Temu's website, the precise number and identity of those products are peculiarly within Temu's knowledge because Temu knows which products it sells to other retailers for resale and which products it does not sell to other retailers for resale.

45.     With respect to products that are not sold exclusively by Temu, the precise number of sales of those products by other retailers is peculiarly within Temu's knowledge because Temu knows how many non-exclusive products it sells to other retailers for resale.  Thus, whether Temu sells more non-exclusive products to consumers than it sells to other retailers is peculiarly within Temu's knowledge.  Thus, for non-exclusive products that Temu sells more to consumers than to other retailers, the prevailing market prices of those products are peculiarly within Temu's knowledge.

**III.     Plaintiff's Experiences**.

46.     On February 21, 2024, Plaintiff Silva purchased two electric massager guns

47.     Temu advertised the electric massager guns as being on sale for $6.29 each and represented to Silva that he would save $9.30 off the strikethrough price of $15.59.

48.     Enticed by the idea of paying less than the regular price and getting $15.59 electric massager guns for the price of $6.29 each, Plaintiff Silva proceeded to add two electric massager guns to his shopping cart.

49.     After clicking the buttons to add the electric massager guns to his shopping cart, Plaintiff Silva was directed to his shopping cart. In his shopping cart, Temu again displayed the strikethrough pricing of the elextric massager guns, and represented to Plaintiff Silva that he was saving $18.60 on the two electric massager guns.

50.     In reliance on Temu's representations and omissions with respect to the pricing of the electric massager guns and the amount of savings he purportedly was receiving, Plaintiff Silva placed his order.

CLASS ACTION COMPLAINT

51.     Immediately after completing his purchase, Temu directed Plaintiff Silva to a webpage confirming the amount he purportedly saved on his order, and amount equal to the sum of the difference between the strikethrough prices for the two electric massager guns.

CLASS ACTION COMPLAINT

52.    Temu also sent Plaintiff Silva an order confirmation email displaying the strikethrough price total for the two electronic massager guns, and the "discount" Plaintiff purportedly received.

53.    Plaintiff Silva purchased the electronic massager guns after Temu had advertised them using misleading strikethrough prices. At the time, Plaintiff Silva believed he was purchasing the electric massager guns at a value of nearly 60% off.

54.    However, discovery will show that prior to Plaintiff Silva's purchase, Temu did not sell the electric massager guns for the full price of $15.59 each for a reasonably substantial period of time, if ever at all.

55.    Plaintiff Silva's understanding of the value of the electric massager guns was based on his belief that Temu regularly sold them for $15.59 each, and that $15.59 represented their value. Temu thereby induced Plaintiff Silva to purchase the electronic massager gun by "by falsely representing to him that he was saving a significant amount of money off their strikethrough prices and by failing to disclose that the strikethrough prices, which Plaintiff Silva reasonably believed to be their regular prices, were not the actual prices at which Temu formerly offered the products for sale for a reasonably substantial period of time. Plaintiff Silva would not have purchased the electronic massager guns, or would have paid less for them, had he known that their true regular prices were less than the advertised strikethrough prices.

56.    Plaintiff's counsel's investigation indicates and discovery will show that the electric massager was not available for purchase directly from a Big Box Retailer.  Discovery will show that the prevailing market price for the electric massage gun was the price at which Temu sold it on its website.

## **CLASS ALLEGATIONS**

57.    Plaintiff brings this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

58.    The proposed classes ("Classes") are defined as follows:

> **Class:** All individuals and entities in the United States who, within the applicable statute of limitations period, purchased one or more Temu products on Temu's website that were advertised as discounted from a strikethrough price.

CLASS ACTION COMPLAINT

**Consumer Subclass:** All members of the Nationwide Class who are "consumers" within the meaning of California Civil Code § 1761(d)

59.     Excluded from the Classes are (i) Defendant and Defendant's subsidiaries and affiliates; (ii) Defendant's officers, directors, and employees; (iii) entities in which Defendant has a controlling interest; (iv) the judicial officer(s) to whom this action is assigned; and (v) the immediate family members, legal representatives, heirs, successors, or assigns of any party excluded under (i)–(iv).

60.     Plaintiff reserve the right to modify or amend the definitions of the proposed Classes and to add subclasses before this Court determines whether certification is appropriate.

61.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

62.     As to numerosity: The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Temu's records. Temu has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

63.     As to commonality: The questions here are ones of common or general interest such that there is a well-defined community of interest among Class members. These questions predominate over questions that may affect only individual class members because Temu has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to:

a.      whether Temu made false or misleading statements of fact in its advertisements;

b.      whether Temu's advertisements had a tendency to mislead a reasonable consumer;

c.      whether Temu's advertising and marketing practices, as alleged herein, violated

established law;

d.      whether a reasonable consumer would interpret the strikethrough prices on Temu's website as the regular price or former price of the products offered for sale on Temu's website;

e.      whether Temu ever sold or offered for sale the products at the advertised strikethrough prices;

f.      whether the limited-time offers advertised on Temu's website were, in fact, so limited in time;

g.      whether Temu's statements concerning the strikethrough prices, savings, and limited-time offers displayed on its website were material, such that a reasonable consumer would attach importance to and be induced to act on the information in deciding whether to make a purchase on Temu's website;

h.      whether a reasonable consumer would interpret the strikethrough prices on Temu's website as the regular or former prices of the products offered for sale on Temu's website;

i.       whether a reasonable consumer would believe the products offered for sale on Temu's website have values equal to their strikethrough prices;

j.      whether Temu misrepresented and/or failed to disclose material facts about the strikethrough prices, discounts, and limited-time offers advertised on its website;

k.      whether Temu knew, or by the exercise of reasonable care should have known, that the strikethrough prices, discounts, and limited-time offers advertised on its website were untrue and misleading;

l.      whether Temu intended the strikethrough prices, discounts, and limited-time offers advertised on its website to induce customers to purchase products;

m.      whether Temu's pricing scheme alleged herein—consisting of misleading strikethrough prices, fictitious savings, and fake limited-time offers—was false or misleading within the meaning of California's False Advertising Law, Consumer Legal Remedies Act, or Unfair Competition Law.

n.     whether Temu has been unjustly enriched from products falsely advertised and sold on its website;

o.     whether Temu is likely to continue engaging in false advertising such that an injunction is necessary; and

p.     whether Plaintiff and members of the Classes are entitled to damages. and restitution, and/or punitive damages as a result of Temu's conduct alleged herein.

64.     As to typicality: Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Temu, as described herein. The evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiff and absent Class members are substantially the same because the challenged practices are uniform for Plaintiff and Class members. Accordingly, in pursuing their own self-interest in litigating the claims, Plaintiff will also serve the interests of the Class.

65.     As to adequacy: Each Plaintiff is a more than adequate representative of the Class pursuant to Rule 23 in that each Plaintiff made purchases on Temu and has suffered damages as a result of Temu's deceptive practices. Additionally, (i) Plaintiff are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated; (ii) Plaintiff have retained competent counsel experienced in the prosecution of class actions; (iii) there is no conflict of interest between Plaintiff and the unnamed members of the Class; (iv) Plaintiff anticipate no difficulty in the management of this litigation as a class action; and (v) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and address the legal issues associated with this type of litigation.

66.     As to predominance: The matter is properly maintained as a class action under Rule 23 because the common questions of law and fact identified herein and to be identified through discovery predominate over questions that may affect only individual Class members.

67.     As to superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this matter pursuant to Rule 23 because the injuries suffered by the individual Class members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for Plaintiff and Class members to individually seek

CLASS ACTION COMPLAINT

1  redress for Defendant's wrongful conduct.

2      68.    Additionally, the class is numerous enough to render joinder of all members or the

3  maintenance of separate suits impracticable. Even if any individual person or group of Class members

4  could afford individual litigation, it would be unduly burdensome to the courts in which the individual

5  litigation would proceed. The class action device is preferable to individual litigation because it

6  provides the benefits of unitary adjudication, economies of scale, and comprehensive resolution by a

7  single court. Further, the difficulties likely to be encountered in the management of this action as a

8  class action are minimal.

9      69.    In contrast, the prosecution of separate actions by individual Class members would

10  create a risk of inconsistent or varying adjudications with respect to individual Class members that

11  would establish incompatible standards of conduct for the party or parties opposing the Class and

12  would lead to repetitious trials of many common questions of law and fact.

13      70.    Plaintiff know of no difficulty to be encountered in the management or maintenance

14  of this action that would preclude its maintenance as a class action. But absent a class action, Plaintiff

15  and Class members will continue to suffer losses, thereby allowing Defendant's violations of law to

16  proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

17      71.    For all these reasons, a class action is superior to other available methods for the fair

18  and efficient adjudication of this action.

19      72.    As stated above, Temu has acted or refused to act on grounds generally applicable to

20  the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a

21  whole.

22      73.    All conditions precedent to bringing this action have been satisfied, waived, or both.

23                          **CLAIMS FOR RELIEF**

24                       **FIRST CLAIM FOR RELIEF**
                  **Violation of California's Unfair Competition Law**
25                   **(Cal. Bus. & Prof. Code § 17200, et seq.)**
                    **(On Behalf of Plaintiff and the Classes)**
26

27      74.    Plaintiff hereby incorporate by reference the preceding paragraphs as if fully restated

28  here.

CLASS ACTION COMPLAINT

75.     Plaintiff bring this cause of action on behalf of themselves and the Class.

76.     Plaintiff bring this cause of action for public injunctive relief pursuant to Section 17203 of the Business and Professions Code and seek an order enjoining Temu from continuing to violate California's Unfair Competition Law.  Plaintiff are entitled to this forward-looking relief because there is no adequate remedy at law that would protect Plaintiff, Class members, and the public at large from Temu's ongoing violations of California's Unfair Competition Law.

77.     Plaintiff additionally bring this cause of action for restitution pursuant to Section 17203 of the Business and Professions Code.  Pursuant to Rule 8(a)(3) of the Federal Rules of Civil Procedure, Plaintiff seek restitution in the alternative to the damages they seek in their first through fifth causes of action.  Plaintiff are entitled to restitution because they lack an adequate remedy at law; the legal remedies available to them are not as equally prompt and certain, and in other ways efficient.

a.      Temu has violated, and continues to violate, the "unlawful" prong of California's Unfair Competition Law, Bus. Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in the following unlawful business acts and practices:

b.      disseminating untrue and misleading advertisements over the internet by advertising misleading strikethrough prices, fictitious savings, and fake limited-time offers, in violation of Bus. & Prof. Code § 17500;

c.      by representing that products offered for sale on its website have characteristics or benefits which they do not have in violation of Civ. Code § 1770(a)(5);

d.      by advertising products on its website with intent not to sell them as advertised, in violation of Civ. Code § 1770(a)(9);

e.      making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions as to products sold on its website, in violation of Civ. Code § 1770(a)(13); and

f.      representing that products sold on its website were supplied in accordance with its previous representations when in fact they were not, in violation of Civ. Code § 1770(a)(16).

78.     Temu has violated, and continues to violate, the "fraudulent prong" of the UCL by

CLASS ACTION COMPLAINT

engaging in the following fraudulent business acts and practices:

       a.     using misrepresentations, deception, and/or concealment of material information in connection with the former price and value of products sold on Temu's website, such that Plaintiff and Class members were likely to be deceived;

       b.     advertising strikethrough prices, discounts, and limited-time offers that are false, misleading, and/or have a capacity, likelihood, or tendency to deceive Plaintiff and Class members; and

       c.     failing to provide Plaintiff and Class members with information as to when, if ever, the strikethrough prices displayed on Temu's website were bona fide offer prices.

79.    Temu has violated, and continues to violate, the "unfair" prong of the UCL by engaging in the following unfair business acts and practices:

       a.     engaging in false reference pricing in connection with the sale of products on its website such that Plaintiff and Class members, who could not have reasonably avoided such predatory schemes, have been injured—a practice that serves no benefit to consumers or competition;

       b.     engaging in false reference pricing whereby the harm to consumers, competition, and the public far outweighs any utility of the practice, which only serves to deceive consumers and give Temu an unfair advantage over other Product manufacturers; and

       c.     engaging in false and misleading advertising in contravention of public policy, including such public policy as reflected in Cal. Bus. & Prof. Code §§ 17200 and 17500, Cal. Civ. Code § 1770(a)(13), and 16 C.F.R. §§ 233.1 and 233.5.

**SECOND CLAIM FOR RELIEF**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code § 1750, et seq.)**
**(On behalf of Plaintiff and the Classes)**

80.    Plaintiff hereby incorporates by reference the preceding paragraphs as if fully restated here.

81.    Temu violated, and continues to violate, Section 1770(a)(5) of the California Civil Code by representing that products offered for sale on its website have characteristics or benefits

1   which they do not have.  Specifically, Temu represents that the value of its products is greater than it

2   actually is by advertising inflated strikethrough prices for products sold on its website.

3        82.    Temu violated, and continues to violate, Section 1770(a)(9) of the California Civil

4   Code by advertising products as discounted when Temu intends to, and does in fact, sell them at their

5   regular prices.

6        83.    Temu violated, and continues to violate, Section 1770(a)(13) of the California Civil

7   Code by making false or misleading statements of fact concerning reasons for, existence of, or

8   amounts of, price reductions on its website.  Specifically, Temu has violated Section 1770(a)(13) by

9   engaging in the following unlawful acts and practices:

10         a.    misrepresenting the regular prices of products on its website by advertising

11        misleading strikethrough prices;

12         b.    advertising discounts and savings that are inflated or nonexistent because they

13        are based on misleading strikethrough prices; and

14         c.    misrepresenting that the discounts and savings on its website are available only

15        for a limited time, when in fact the discounts and savings are not so limited in time.

16       84.    Temu violated, and continues to violate, Section 1770(a)(16) of the California Civil

17  Code by representing that the subject of a transaction has been supplied in accordance with a previous

18  representation when it has not. Specifically, Temu represents on its website that it sells products at

19  specified discounts. After a customer places an order, Temu emails the customer an order confirmation

20  confirming that the products were sold at a discount. But in fact, Temu does not sell, nor does it intend

21  to sell, its products at the specified discounts.

22       85.    Pursuant to California Civil Code section 1782(a), Plaintiff's counsel provided proper

23  notice to Temu of Plaintiff intent to pursue damages under the Consumers Legal Remedies Act on

24  behalf of themselves and all others similarly situated, and provided Temu a reasonable opportunity to

25  cure.  The letter was sent via certified mail, return receipt requested, to Temu's principal office in

26  Boston, located at 31 St James Ave Suite 355, Boston, MA 02116, and to Temu's agent for service of

27  process, CT Corporation System, located at Corporate Service Company, 84 State Street, BOSTON,

28  MA   02109. As of the filing this Complaint, Temu has not taken any actions to correct the false

CLASS ACTION COMPLAINT

1  advertising on its website, nor has it addressed any of other issues raised in the letter, such as such as

2  notifying and providing monetary compensation to Class members.

3        86.    Plaintiff seek actual damages pursuant to California Civil Code section 1780(a)(1),

4  public injunctive relief pursuant to section 1780(a)(2), punitive damages pursuant to section

5  1780(a)(4), and any other relief the court deems proper pursuant to section 1780(a)(5).

6

7  **THIRD CLAIM FOR RELIEF**<br>**False and Misleading Advertising**<br>**(Bus. & Prof. Code §§ 17500, *et seq.*)**

8  **(On Behalf of Plaintiff and the Classes)**

9        87.    Plaintiff hereby incorporate by reference the preceding paragraphs if fully restated

10  here.

11        88.    Plaintiff bring this cause of action on behalf of themselves and the Class.

12        89.    Plaintiff bring this cause of action for public injunctive relief pursuant to Section

13  17535 of the Business and Professions Code and seek an order enjoining Temu from continuing to

14  violate Section 17500. Plaintiff are entitled to this forward-looking relief because there is no adequate

15  remedy at law that would protect Plaintiff, Class members, and the public at large from Temu's

16  ongoing violations of Section 17500.

17        90.    Plaintiff additionally bring this cause of action for restitution pursuant to Section

18  17535 of the Business and Professions Code. Pursuant to Rule 8(a)(3) of the Federal Rules of Civil

19  Procedure, Plaintiff seek restitution in the alternative to the damages they seek in their first through

20  fifth causes of action. Plaintiff are entitled to restitution because they lack an adequate remedy at law;

21  the legal remedies available to them are not as equally prompt and certain, and in other ways efficient.

22        91.    Temu has violated, and continues to violate, Section 17500 of the Business and

23  Professions Code by disseminating untrue and misleading advertisements over the internet to Plaintiff

24  and Class members.

25        92.    Temu disseminated untrue and misleading advertisements by advertising misleading

26  strikethrough prices, fictitious savings, and fake limited-time offers with respect to Temu products

27  offered for sale on its website.

28        93.    Temu disseminated such untrue and misleading advertisements with the intent to

CLASS ACTION COMPLAINT

induce Plaintiff and Class members to purchase products on its website.

94.     Temu knew, or by the exercise of reasonable care should have known, that the advertised strikethrough prices, discounts, and limited-time offers were untrue or misleading.

95.     Temu fraudulently concealed from and intentionally failed to disclose to Plaintiff and

96.     Class members the truth about its strikethrough prices, discounts, and limited-time offers.

**FOURTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Classes)**

97.     Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

98.     Plaintiff, individually and on behalf of the Classes, assert a common law claim for unjust enrichment. This claim is brought solely in the alternative to Plaintiff's statutory claims. In such circumstances, unjust enrichment will dictate that Defendant disgorge all improperly assessed fees. Also, if claims are deemed not to be covered by the contract—for example, if Defendant has violated state and federal law, but in such a way that it does not violate the contract, then unjust enrichment will require disgorgement of all improperly assessed subscription fees.

99.     By means of Defendant's wrongful conduct alleged herein, Defendant knowingly assessed subscription fees upon Plaintiff and the members of the Classes that cancelled their subscriptions and did not receive written notice of renewals of annual subscriptions that are unfair, unconscionable, and oppressive.

100.    Defendant has unjustly retained a benefit in the form of improper membership fees to the detriment of Plaintiff and the members of the Classes.

101.    Defendant has retained this benefit through its fee maximization scheme, and such retention violates fundamental principles of justice, equity, and good conscience.

102.    Defendant should not be allowed to profit or enrich itself inequitably and unjustly at the expense of Plaintiff and the members of the Class and should be required to make restitution to Plaintiff and the members of the Classes.

**PRAYER FOR RELIEF**

For the foregoing reasons, Plaintiff, individually and on behalf of the Classes, pray for the following relief:

1.      Certification for this matter to proceed as a class action on behalf of the Classes pursuant to Rule 23;

2.      Appointment of the Plaintiff as representatives of the Classes;

3.      Appointment of counsel for Plaintiff as Lead Counsel for the Class;

4.      A finding that Temu's practices are in violation of state consumer protection statutes;

5.      Restitution of all amounts improperly paid to Temu by Plaintiff and the members of the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

6.      Actual damages in an amount according to proof;

7.      Statutory damages as allowed by law;

8.      An award of pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

9.      An award of costs and attorneys' fees under the common fund doctrine and all other applicable law; and

10.     Declaratory and injunctive relief on behalf of the general public.

11.     Plaintiff also request such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: May 13, 2024                            **KALIELGOLD PLLC**


By: */s/ Jeffrey D. Kaliel*
Jeffrey D. Kaliel
Sophia Goren Gold

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT